■ MARGARET A. FELT, Appellant, v SCOTT OLSON, Defendant, and ELIZABETH C. OLSON, as Executrix of CONRAD W. OLSON, Deceased, Respondent.—Judgment affirmed, with costs. Memorandum: This action, tried before the court without a jury, presented fact questions which were resolved in favor of defendant. We find no reason to disturb this determination. The dissenters place great reliance upon the testimony of a handwriting expert who rendered his opinion as to the authenticity of the signature of Conrad W. Olson on certain documents in issue. CPLR 4536 provides for the admissibility of certain proof of a disputed writing, not the probative value of the proof. The qualification of a witness to testify as an expert is to be ascertained by the court. The extent of an expert's qualification is a fact to be considered by the trier of the fact when weighing the expert testimony (Meiselman v Crown Hgts. Hosp., 285 NY 389; Matter of Commissioner of

*Welfare of City of N.Y. v Simon,* 20 AD2d 865; Fisch, New York Evidence [2d ed], § 428). The opinion of an expert may be accepted or rejected by the jury (Richardson, Evidence [10th ed], § 367). "Even though no testimony was offered by the plaintiff to contradict the testimony of these experts, it was still within the province of the jury to reject their testimony altogether. The weight to be given to opinion evidence ordinarily is entirely for the determination of the jury" *(Commercial Cas. Ins. Co. v Roman,* 269 NY 451, 456-457). The authenticity of Conrad Olson's signature was placed in issue by the answer of defendant denying the existence of the notes or indebtedness. The subscribing witness to the notes, called by plaintiff, testified to seeing Scott Olson sign the notes but stated that she did not see Conrad Olson sign them, nor did she see his signature on them. Olson's widow also testified and plaintiff had an opportunity to ask her if the signatures on the notes belonged to her husband. This was not done so there still remains the denial raised in the answer. "In a case of this kind, where death has sealed the lips of a defendant, the evidence against him must be clear and convincing, and it is for the triers of the facts to determine, subject to the power of the court to set aside their verdict, whether it is, or is not. In so doing, they may reject evidence as to personal transactions, even though uncontradicted, which might be sufficient to satisfy them, if the defendant were living" *(Frieder v Fuchs,* 2 AD2d 772, 773). Even were we to conclude that the trial court erred in not accepting the handwriting expert's testimony as to the genuiness of Olson's signature on the two notes, we believe plaintiff still may not succeed. In order for her to succeed on her cause of action based upon these two notes it was necessary for plaintiff to prove that there was consideration for the notes. We find insufficient proof of consideration in the record to support a verdict for plaintiff as did the trial court. There is no evidence that Olson ever actually received the $10,000 proceeds of the two notes. On the contrary, Olson's widow testified that she was familiar with her husband's business affairs and that he never received such funds or deposited them in their joint bank account. The proof also showed that Olson had borrowed money on a previous occasion from Felt who was his landlord and Mrs. Olson testified that she was fully aware of that debt. The record reveals that this debt was repaid. The testimony also demonstrates that Felt was in the process of obtaining a divorce from his third wife and drew two separate $5,000 checks from his joint bank account which he held with his daughter concerning which account she testified that she knew very little. Further, plaintiff's daughter, as payee, has to prove that either she or her father took the notes for value. Even conceding the genuineness of Olson's signature and a resulting presumption of consideration for the notes, in our view this presumption was rebutted by defendant's proof. Thus plaintiff failed to sustain her burden sufficient to entitle her to payment on these two notes (42 NY Jur, Negotiable Instruments, § 462). When the findings and determinations of the trial court are not against the weight of the credible evidence they should not be disturbed *(Shipman v Words of Power Missionary Enterprises,* 54 AD2d 1052). All concur, except Hancock, Jr., and Witmer, JJ., who dissent and vote to reverse and grant judgment for plaintiff, in accordance with the following memorandum.

Hancock, Jr., and Witmer, JJ. (dissenting). We would reverse and grant judgment for plaintiff in accordance with summons with notice on the two $5,000 promissory notes plus interest from their respective due dates, to wit, November 3, 1975 and November 10, 1975. Upon the trial before the court without a jury the record shows that on September 10, 1974 Conrad W.

Olson (now deceased, then the operator of Nordic Restaurant in Jamestown; herein referred to as "Olson") was seated at his bar with his friend, Frank E. Felt (Felt). His son, Scott Olson, was working in the kitchen and Pamela Williams (Mort) was working as barmaid. At about 9:30 P.M. Olson called his son Scott from the kitchen and asked him to sign two papers on the bottom lines and asked Pamela also to sign as a witness; and Scott and Pamela complied. Scott asked his father what it was about, and Olson replied that Scott need not "mind" because he would "never have to worry about it." Olson told Pamela that Felt was getting a divorce and, she concluded, that this was a way in which Felt could avoid some financial responsibility or benefit to his wife. Over objection, the court received this testimony but only "as to the form of the signature of Scott Olson." The court received into evidence as Exhibits Nos. 3 and 4 two promissory notes, each in the amount of $5,000 payable to the order of Margaret Anne Felt, daughter of Frank Felt, and purportedly signed by Conrad W. Olson, beneath whose signature is the signature of Scott Olson, and to the left of which signatures Pamela Williams (Mort) signed as witness; Exhibit No. 3 being dated September 10, 1974 and made payable 14 months later, and Exhibit No. 4 being dated October 3, 1974 and made payable 13 months later. The court also received into evidence two checks, Exhibits Nos. 5 and 6, drawn on the First National Bank of Jamestown; Exhibit No. 6 being dated September 10, 1974, written in the amount of $5,000 and signed by Frank E. Felt, payable to Conrad W. Olson; and Exhibit No. 5 being dated October 2, 1974, also written in the amount of $5,000 and signed by Frank E. Felt, payable to Conrad W. Olson. Each of these checks was indorsed by Conrad W. Olson to Bankers Trust Co. of Western New York. No evidence was introduced to show what Olson did at that time with the proceeds of the two checks. On March 20, 1976, about four months after the above notes became payable, Olson died. There is no evidence that Felt had made any effort in this intervening four-month period to collect on the notes. Early in January, 1977 Felt engaged an attorney, John L. Goodell, Esq., to bring an action in the name of his daughter, Margaret Anne Felt, plaintiff herein, against Elizabeth Clara Olson as executrix of the will of Conrad W. Olson, deceased, and Scott Olson to collect the amount of two notes, Exhibits Nos. 3 and 4. The executrix answered that the notes do not represent a real debt to the plaintiff; and Scott Olson answered that his signature was obtained by fraud and misrepresentation and without consideration. During the course of the trial the action was dismissed as against Scott Olson, and no issue with respect thereto is presented on this appeal. In the year following the institution of this action Frank E. Felt died. Although the date of death is not stated in the record, the fact is assumed. His daughter, the plaintiff, testified that she did not know of the existence of the notes or that the action had been begun in her behalf until February, 1978, and that she had had no personal dealing with Olson. She testified that her father had been married three times and that she was his daughter by his first marriage; that she had had a joint bank account with her father in an amount sufficient at times to cover the two checks (Exhibits Nos. 5 and 6) and that on occasion withdrawals were made from that account in favor of her father. The account had been opened because her father wanted it so, and she knew very little about it. Plaintiff introduced into evidence Exhibit No. 11, a bank statement in the name of Frank E. Felt on an account in the First National Bank of Jamestown, showing a deposit and withdrawal of $5,000 on or about September 10, 1974 and a further deposit of something in excess of $5,000 and a withdrawal of $5,000 on October 4, 1974. Also

introduced into evidenced was check register booklet, Exhibit No. 10, confirming the deposits in that account to enable the issuance of Checks Nos. 5 and 6 given to Olson as of such dates, and listing his name on each such entry. In proof of the signatures of Olson on the notes and his indorsements on the checks, plaintiff called an expert in handwriting with 40 years of experience, who had written over 35 authoritative articles on the subject which had been published in the American Bar Association Journal, and his credentials are impressive. Using the signature on Olson's will, which had been admitted to probate and was recognized by the Trial Justice as authentic, the expert testified that the signature of Olson on the notes (Exhibits Nos. 3 and 4) and indorsements on the checks (Exhibits Nos. 5 and 6) were genuine, and he gave detailed testimony to support his opinion. Despite such evidence the Trial Justice concluded that plaintiff had failed to prove consideration for or delivery of the notes; and he held that because the expert only testified from Olson's signature on his will, such known sample of handwriting was insufficient as a basis upon which the expert could express an acceptable opinion. The court also found that the circumstances of the transaction were "suspicious"; and he dismissed the complaint as against the Olson estate. This was error. CPLR 4536 provides that, "Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the handwriting of the person claimed to have made the disputed writing shall be permitted." Thus, the court erred in rejecting the testimony of the handwriting expert as to the authenticity of the signatures of Olson on the two notes and the indorsements on the two checks (see Richardson, Evidence [10th ed], § 374). Moreover, neither Olson's widow nor her son came forth to deny the authenticity of his signatures. The signatures stand, therefore, undisputed in the case, and the court erred as a matter of law in holding that they were not established. The suggestion that Felt was acting to impair his third wife's financial interest as against him has no efficacy in this action. Further, Felt's possession of the notes established that they were delivered to him by Olson. The money which Felt advanced to Olson constituted valid consideration supporting Olson's written promises to repay it to Felt's daughter, the plaintiff (Restatement, Contracts, § 75, subd [2]); and there was no reason why Felt could not make a gift to his daughter of the proceeds of the notes in this manner. There is also no reason why the Olson estate should receive a windfall of $10,000 and interest by dismissal of these apparently valid claims. Upon the clear proof that Felt advanced the $10,000 to Olson in return for the two notes which Olson executed therefor in favor of Felt's daughter, and there being no claim of payment thereof (see 42 NY Jur, Negotiable Instruments, §§ 470-471), the court erred in dismissing the action, and plaintiff is entitled to judgment thereon, with costs and disbursements. (Appeal from judgment of Chautauqua Supreme Court—promissory notes.) Present—Cardamone, J. P., Hancock, Jr., Doerr, Witmer and Moule, JJ.