■ HART BAUMFELD et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 63932.) — Appeal from a judgment of the Court of Claims (Lengyel, J.), entered November 17, 1983, which dismissed the claim.

Claimants are the owners of a house and lot which they purchased in 1976. Approximately 1,000 feet east of the residence and at a 50-foot higher elevation on State-owned land on the opposite side of a road, the Department of Transportation stored a mixture of salt and sand in large quantities, which it used on snowy and icy highways during wintertime. Claimants' water supply consisted of a shallow well under their basement floor. Immediately after taking possession of the house, they noticed that the water had a salty taste and they observed other deposits of salt in the plumbing and on basement walls. They concluded that the source of the contamination was the State's stockpile of salt and sand which found its way, by a subterranean route, to claimants' residence. A claim was filed which was dismissed after trial in the Court of Claims. This appeal ensued.

The issue on appeal is whether claimants met their burden of proof. In order to sustain their burden, claimants must establish by the credible evidence that it is more likely than not that the

State's conduct was a substantial cause of their damage (*Koester v State of New York,* 90 AD2d 357, 361-362). It is not required that claimant must exclude every other possible cause of damage, but rather it is sufficient that circumstances are shown from which causation may be reasonably inferred (*supra,* at p 361). In the instant case, the trial court's finding that claimants failed to sustain their burden of proof was predicated in significant part upon the court's determination of the quality of the testimony of claimants' experts. The weight to be attributed to expert testimony is a question for the trier of fact (*Felt v Olson,* 74 AD2d 722, 723, affd 51 NY2d 977; Richardson, Evidence [10th ed], § 368, p 343).

The fact that salt contamination existed was undisputed. The only issue was its source. Claimants admit that the contamination was not caused by surface water running downhill from State land to their residence. Their theory was that the salt, dissolved by rain and melting snow, permeated the soil surrounding the stockpile and followed underground water routes to their residence. Two witnesses called by claimants were allowed to testify as experts and they expressed their opinions that the stockpile was the source of the contamination. Their testimony was disputed by the State's expert, who testified as to his extensive investigation, from which he concluded that the source of the contamination was closer to the residence than the State's stockpile.

From our review of the evidence, it is apparent that claimants' expert witnesses provided no factual information other than to identify salt as the contaminant. Their opinions were little more than those of laymen who might conclude that because water runs downhill and because the most direct route was from the stockpile to the residence, the stockpile was the source of the contamination. Neither expert had the specialized training and experience to trace the underground flow of water, nor did either attempt to do so.

On the other hand, the State's expert was an engineering geologist in the Department of Transportation's Bureau of Soil Mechanics, with 26 years experience in that capacity. He testified that it was his conclusion, after examining the soil in the area, that the subsurface water could flow in any direction. After making that conclusion, he made test borings and found that the subsurface soil on claimants' side of the road contained 10 times as much salt as did the soil on the State's side. He also found the major salt contamination of claimants' property to be on the side of the house which faced away from the stockpile. He also took into consideration that claimants' septic tank was only

20 feet behind the house and that the leach field was immediately adjacent thereto. There was testimony that there had been a water softener in the house which was customarily loaded with 150 pounds of salt every three months and back-flushed into the septic system twice a week. Claimants' land was surrounded on three sides by property utilized for farm land and cattle grazing. The expert's opinion was that the source of the contamination was in close proximity to the house, as opposed to the possibility that it was from the stockpile. The salt contamination could have resulted from the septic system, fertilizers or animal manure, a combination thereof, or some unknown reason.

The trial court concluded that greater weight should be given to the expert testimony of the State's witness than to that of claimants' witnesses. An issue of fact existed upon which claimants had the burden of proof. We agree with the trial court in its determination that claimants failed to sustain that burden. There was insufficient proof to establish that the State's conduct was a substantial cause of the contamination.

Deciding as we have, we do not address ourselves to the remaining issues raised on this appeal.

Judgment affirmed, without costs. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.